IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| KENNEDY KRIEGER INSTITUTE, INC., *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CIVIL NO.: WDQ-14-1680 |
| | * | |
| BRUNDAGE MANAGEMENT COMPANY, INC., EMPLOYEE BENEFIT PLAN, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Kennedy Krieger Institute, Inc. and its affiliates (collectively, "the Plaintiffs") sued Brundage Management Company, Inc. ("Brundage"), Brundage Management Co., Inc. Employee Benefit Plan ("the Plan"), Benefit Management Administrators, Inc. ("BMA"), and Inetico, Inc. ("Inetico") for breach of contract, fraud,[1] and violating the Texas Insurance Code. Pending are four motions to dismiss. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). Because the Court lacks personal jurisdiction over some of the Defendants, the case will be transferred to the United States District Court for the Western District of Texas.

---

[1] The fraud claim was only against Brundage.

I.    Background[2]

  A. The Parties

Kennedy Krieger Institute, Inc. ("Kennedy Krieger") is a non-profit Maryland corporation.  ECF No. 1 at ¶ 1.   Kennedy Krieger "is the parent corporation of Kennedy Krieger Children's Hospital, Inc. and Kennedy Krieger Associates, Inc."  Id. Brundage is a Texas corporation with its principal place of business in Texas.  Id. at ¶ 4.   Brundage "provides medical and other health care benefits to its employees by sponsoring and/or providing a self-funded group health plan . . . ."  Id. at ¶ 5. The Plan "covers inpatient treatment for mental health and behavioral health issues . . . ."  Id. at ¶ 13.   The Plan "designates Brundage as the plan administrator."  Id. at ¶ 14.

BMA is a Texas corporation with its principal place of business in Texas.  Id. at ¶ 6.   BMA is the claims administrator of the Plan.  Id. at ¶ 14.   Inetico is a Florida corporation with its principal place of business in Florida.  Id. at ¶ 7. Inetico "provides third-party administration services on behalf of some or all of the foregoing entities."  Id. at ¶ 14.

_____

[2] For the motion to dismiss, the well-pled allegations in the complaint are accepted as true.  Brockington v. Boykins, 637 F.3d 503, 505 (4th Cir. 2011).  The Court will consider the pleadings, matters of public record, and documents attached to the motion that are integral to the complaint and whose authenticity is not disputed.  See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

B. The Hospitalization of John Doe

Jane Doe[3] was an employee of Brundage and was covered by the Plan.  ECF No. 1 at ¶ 15.  Jane Doe had a minor son, John Doe, who was also covered by the Plan.  *Id.* at ¶ 16.  Jane Doe and John Doe are not Maryland citizens.[4]

John Doe is "a developmentally disabled individual."  *Id.* at ¶ 16.  He suffered from "significant mental health issues, including but not limited to significant and frequent self-injury, aggression, and pica (consumption of non-nutritive substances such as dirt)."  *Id.* at ¶ 17.  Mr. Doe was receiving treatment near his home from a local physician.  *Id.*  The physician referred Mr. Doe to Kennedy Krieger which "has a nationally renowned inpatient program for treating children who suffer from severe behavioral dysfunction, aggression, and disruptive behavior."[5]

---

[3] The pseudonyms refer to the mother and son involved in this case.

[4] The complaint does not state the citizenship of the Does, only that John Doe was receiving treatment near his home ("locally") before being referred to Kennedy Krieger Children's Hospital in Maryland.  *See* ECF No. 1 at ¶¶ 17-18.  Because the Plaintiffs did not plead the citizenship of the Does, the Court will assume they are not Maryland citizens.  Further, Brundage asserts that Jane Doe is "a non-Maryland resident," ECF No. 58-1 at 10, which the Plaintiffs do not deny, *see* ECF No. 58.

[5] The Plaintiffs assert that the "physician believed that everything that could be done locally on an outpatient basis had been done, Mr. Doe remained a danger to himself and others, the danger was actually worsening, and it was medically necessary

"In November 2012, Kennedy Krieger's Neurobehavioral Unit team evaluated Mr. Doe and determined that it would be appropriate for him to be admitted to the Neurobehavioral Unit." *Id.* at ¶ 22. On November 21, 2012, the Plaintiffs sent an authorization request to Brundage, BMA, and Inetico. *Id.* at ¶ 23. The Plaintiffs informed the Defendants that "Mr. Doe posed significant risks to himself and others, other attempts at treatment had not been successful, the lack of hospitalization posed significant risks, and a four-month inpatient admission to the Neurobehavioral Unit at Kennedy Krieger was medically necessary." *Id.* at ¶ 24.

Before February 14, 2013, Inetico told the Plaintiffs that "inpatient services at Kennedy Krieger's Neurobehavioral Unit were covered under the [] Plan, and authorized the first seven days of coverage." *Id.* at ¶ 27. On February 14, 2013, the Plaintiffs admitted Mr. Doe to the Neurobehavioral Unit in Maryland. *Id.* at ¶ 28.

On February 22, 2013, Inetico informed the Plaintiffs that any further inpatient care of Mr. Doe would not be covered by the Plan because it was "not medically necessary." *Id.* at ¶ 31. The Plaintiffs' physicians believed that releasing Mr. Doe "would be unethical" and continued his inpatient care. *Id.* at ¶

---

for Mr. Doe to be hospitalized at Kennedy Krieger." ECF No. 1 at ¶ 19.

30.   After several months of treatment, the Plaintiffs'

"physicians and staff successfully treated Mr. Doe, and he was

released after completing the program." *Id.* at ¶ 35.  The final

bill for the Plaintiffs' services was $750,000, which remains

unpaid. *Id.* at ¶ 36.

Brundage denied Ms. Doe's claim. *See id.* at ¶¶ 37-38.

"Ms. Doe authorized the Plaintiffs to file appeals of the denial

of benefits." *Id.* at ¶ 38.  "In ruling on the appeals,

Brundage, Benefit Management Administrators, and/or [Inetico]

came to the conclusion that the treatment was "not medically

necessary." *Id.* at ¶ 39.

"In an attempt to dissuade Ms. Doe from pursuing the matter

any further, [] Brundage falsely advised Ms. Doe that it would

be bankrupt if ordered to pay, and suggested that she would be

fired if she pursued the matter further."[6]  *Id.* at ¶ 41.

Because of Brundage, Ms. Doe refused to assign her ERISA right

to pursue the denial to the Plaintiffs. *Id.*

---

[6] The Plaintiffs assert that "Brundage has annual revenues
exceeding $12,000,000.  Moreover, a self-funded group health
plan typically purchases excess loss insurance, also known in
the insurance industry as stop-loss insurance, that indemnifies
the plan against any significant or unexpected claims." ECF No.
1 at ¶ 40.

C. Procedural History

On May 23, 2014, the Plaintiffs sued the Defendants for breach of contract (promissory estoppel and third-party beneficiary) and violations of the Texas Insurance Code.   ECF No. 1.   The Plaintiffs also alleged that Brundage had committed fraud.  *Id.*  On July 9, 2014, Brundage and the Plan filed a joint answer.[7]  ECF No. 21.  On July 21, 2014, BMA moved to dismiss.[8]  ECF No. 23.  Inetico also moved to dismiss.  ECF No. 24.[9]

On August 19, 2014, Brundage and the Plan filed a motion for summary judgment.  ECF No. 33.  On October 6, 2014, Brundage and the Plan filed a motion for extension of time to file amended answers, and requested the motion for summary judgment be withdrawn.  ECF No. 54.  One of the reasons counsel gave for withdrawing the motion was to preserve personal jurisdiction

---

[7] Brundage asserted that the Plan was not an individual legal entity capable of being sued.  ECF No. 21 at 2, 9.  Thus, the answer frequently uses "Defendant" and "Defendants" interchangeably.  *See, e.g.*, *id.* at 2.  When Brundage wished to distinguish between the Plan and Brundage, the answer referred to the entity by name.  *See id.* at 9.

[8] BMA asserted that the Court lacked personal jurisdiction, venue was improper, and the complaint failed to state a claim upon which relief could be granted.  ECF No. 23.

[9] Inetico argued that the complaint failed to state a claim.  ECF No. 24.

arguments.   ECF No. 54-1 at 3.   The Plaintiffs consented to the motion, and the Court granted the request.   ECF Nos. 54-55.

On November 7, 2014, Brundage and the Plan moved for judgment on the pleadings.[10]   ECF Nos. 58-59.   On November 12, 2014, Brundage and the Plan filed amended answers.   ECF Nos. 64-65.

II.   Analysis

    A. Personal Jurisdiction

        1. Legal Standard

The Court may dismiss a complaint unless the plaintiff can prove personal jurisdiction by a preponderance of the evidence.[11] When, as here, the Court decides the issue without a hearing, "the plaintiff need prove only a *prima facie* case of personal jurisdiction." *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).   "In deciding whether the plaintiff has made the requisite showing, the [C]ourt must take all disputed facts

---

[10] Brundage and the Plan asserted that the Court lacked personal jurisdiction over them, and the complaint failed to state a claim.   *See* ECF No. 58-1 at 5.

[11] *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993); Fed. R. Civ. P. 12(b)(2).   Personal jurisdiction may be general or specific.   General jurisdiction requires the defendant's "continuous and systematic" contacts with the forum state. *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000).   Specific jurisdiction requires that the defendant's "contacts relate to the cause of action and create a substantial connection with the forum state." *Id.*

and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). However, the Court need not "credit conclusory allegations or draw farfetched inferences."[12]

A federal district court may assert specific personal jurisdiction over a non-resident when the exercise of jurisdiction is (1) authorized by the forum state's long-arm statute, and (2) consistent with due process.[13]

Maryland's long-arm statute limits jurisdiction to claims "arising from any act enumerated [in the statute]." Md. Code, Cts. & Jud. Proc. § 6-103(a). Under subsection (b)(1) of the statute, a court "may exercise personal jurisdiction over a person, who directly or by an agent transacts any business" in Maryland. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1).[14] A court may also exercise personal jurisdiction over a person

---

[12] *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, *1 (4th Cir. May 30, 2000) (*citing Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)).

[13] *Carefirst of Md., Inc.*, 334 F.3d at 396. In Maryland, the "statutory inquiry merges with [the] constitutional inquiry," because "Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Id.* at 396-97. A plaintiff must still specify which provisions of the long-arm statute provide for personal jurisdiction over the defendant. *See Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 811-12 & n.7 (D. Md. 2010); *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006).

[14] The Plaintiffs do not identify the part of the statute that covers the Defendants' conduct.

under the statute if that person or his agent "causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Although a defendant need not have been physically present in Maryland,[15] the plaintiff must show "some purposeful act in Maryland in relation to one or more of the elements of [the] cause of action."[16]

Due process requires that the defendant have "minimum contacts" with the State such that maintaining the suit "does not offend 'traditional notions of fair play and substantial justice.'"[17] In determining whether the exercise of specific

---

[15] *Capital Source Fin., LLC v. Delco Oil, Inc.*, 625 F. Supp. 2d 304, 313 (D. Md. 2007).

[16] *Talegen Corp. v. Signet Leasing & Fin. Corp.*, 657 A.2d 406, 409 n.3 (Md. Ct. Spec. App. 1995); *see also Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006) (although it was "argu-able that [the] [d]efendant [had] performed work or service in Maryland," jurisdiction under subsection (b)(1) was improper because "the cause of action [did] not arise from that work or service"); *Bond v. Messerman*, 873 A.2d 417, 430 (Md. Ct. Spec. App. 2005) ("The fact that [the defendant] [had] referred his client to [a Maryland hospital] ha[d] no bearing as to the jurisdictional issue because that referral [was] in no way connected to [the plaintiff's] cause of action against [the defendant].").

[17] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

personal jurisdiction comports with due process, a court traditionally considers, "the extent to which the defendant has purposefully availed [it] of the privilege of conducting activities in the state." *Carefirst of Md., Inc.*, 334 F.3d at 397.

### 2. Personal Jurisdiction over BMA, Brundage, and the Plan[18]

BMA, Brundage, and the Plan are all residents of Texas. ECF No. 1 at ¶¶ 4-7.  The Plaintiffs do not allege that BMA, Brundage, or the Plan have offices in Maryland or regularly do business in Maryland.  *See id.* at ¶ 9.  In the complaint, the Plaintiffs assert that personal jurisdiction is proper because "they each possess the requisite minimum contacts with the State of Maryland, such that the maintenance of this suit in this

---

(1945)).

[18] The Plaintiffs argue that Brundage and the Plan have waived any objection to personal jurisdiction.  ECF No. 66 at 1-2. Brundage and the Plan objected to personal jurisdiction in their original answer, as well as in their amended answers.  ECF No. 21 at 9; ECF No. 64 at 7; ECF No. 65 at 7.  Although Brundage and the Plan filed a motion for summary judgment, it was later withdrawn.  "Withdrawal of a motion has a practical effect as if the party had never brought the motion."  *Caldwell-Baker Co. v. S. Ill. Railcar Co.*, 225 F. Supp. 2d 1243, 1259 (D. Kan. 2002). Brundage and the Plan withdrew the motion for summary judgment, in part, to preserve their personal jurisdiction argument, and the Plaintiffs consented to the motion.  ECF No. 54-1 at 3. Thus, Brundage and the plan did not waive their jurisdiction defense.  *See Caldwell-Baker Co.*, 225 F. Supp. 2d at 1259.

jurisdiction does not offend traditional notions of fair play and substantial justice."[19]   *Id.*

Jane Doe chose to seek medical assistance for her son in Maryland.[20]   There are no allegations that the Defendants regularly ensure Maryland residents.[21]   The Plaintiffs accuse BMA, Brundage, and the Plan of not properly processing Jane Doe's claim; but these acts and omissions occurred at their offices in Texas, not in Maryland.   *See* ECF No. 1 at ¶¶ 56-62. None of the actions by these Defendants establishes "that the nonforum [D]efendant[s] purposefully directed [their] activities toward residents of the forum state or purposefully availed [themselves] of the privilege of conducting activities

---

[19] Bare allegations of sufficient contacts cannot establish personal jurisdiction. *See Lolavar v. de Santibanes*, 430 F.3d 221, 230 (4th Cir. 2205) (specific facts of a conspiracy were needed in order for the court to exercise jurisdiction over a co-conspirator).

[20] *See Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010) ("The 'purposeful availment' element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of random, fortuitous, or attenuated contacts *or the unilateral activity of another person or third party.*") (emphasis added) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[21] The Plaintiffs assert the BMA should have foreseen that they could be called in Maryland because on its website BMA stated it "provides a broad-spectrum of TPA services to self-funded clients nationwide." ECF No. 35 at 17. However, "'foresee-ability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U .S. 286, 295 (1980).

therein."[22]   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78
(1985).

The only contact arguably "directed" at Maryland was
Inetico's alleged representation to the Plaintiffs that Mr.
Doe's first seven days of inpatient treatment would be covered
under the Plan.   In their response to Brundage, the Plaintiffs
argue that the Court has jurisdiction over Brundage and the Plan
because Inetico was acting as their agent.[23]   *See* ECF No. 66 at
2.   The complaint, however, merely states that Inetico was
acting "individually and on behalf of the other Defendants."
ECF No. 1 at ¶ 27.   The Plaintiffs have not properly pled
specific facts of an agency relationship that would allow the
Court to exercise personal jurisdiction over the other
Defendants.[24]   *See Lolavar*, 430 F.3d at 230.

The Court does not have personal jurisdiction over BMA,
Brundage, or the Plan.   However, because the Court will transfer
the case to a proper venue--as requested by BMA--the personal

---

[22] *See Choice Healthcare, Inc.*, 615 F.3d at 369-72; *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1248 (9th Cir. 1984); *Perez v. Pan Am. Life Ins. Co.*, No. 96-20241, 1996 WL 511748, at *2 (5th Cir. August 20, 1996); *St. Luke's Episcopal Hosp. v. La. Health Serv. and Indem. Co.*, No. 08-1870, 2009 WL 47125, at *1-2 (S.D. Tex. Jan.6, 2009).

[23] The Plaintiffs never made this argument against BMA.

[24] Even if the Plaintiffs had pled a proper agency relationship, Inetico's contacts are insufficient under due process to establish personal jurisdiction. *See Hunt*, 728 F.2d at 1248; *Perez*, 1996 WL 511748, at *2.

jurisdiction arguments will be moot,[25] and the Court will not dismiss the complaint.

   B.  Venue

   Under 28 U.S.C. § 1406(a), a district court may transfer a case to any other district or division where it might have been brought.  Although the statute is meant to cure defects when a plaintiff brings a case in the improper venue, "section 1406(a) has been interpreted to authorize transfers in cases where venue is proper but personal jurisdiction is lacking . . . that would prevent the action from going forward in that district."  *In re Carefirst of Md., Inc.*, 305 F.3d 253, 255 (4th Cir. 2002); *see also Porter v. Groat*, 840 F.2d 255, 258 (4th Cir.1988); *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir.1980).

   Accordingly, the Court will transfer the case to the Western District of Texas where personal jurisdiction and venue are proper.[26]

---

[25] The Court will not grant the Defendants' motions to dismiss because they also contain Fed. R. Civ. P. 12(b)(6) arguments for the District Court for the Western District of Texas to consider.

[26] BMA, Brundage, and the Plan are Texas citizens.  Inetico is a citizen of Florida, but engaged in business with the other Defendants in Texas, including entering into contracts in Texas. Processing of John Doe's claim and the decision to deny payment occurred in Texas.  Further, the Plaintiffs have made a Texas state law insurance claim against the Defendants; a Texas court will be better equipped to adjudicate that claim.

III. Conclusion

For the reasons stated above, BMA's motion to transfer venue will be granted; the Court will transfer the case to the United States District Court for the Western District of Texas.

_____3/3/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge

14