UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KENNEDY KRIEGER INSTITUTE, INC.; KENNEDY KRIEGER CHILDREN'S HOSPITAL, INC.; and KENNEDY KRIEGER ASSOCIATES, INC., | § § § § § § | CV. No. 5:15-CV-162-DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| BRUNDAGE MANAGEMENT COMPANY, INC. EMPLOYEE BENEFIT PLAN; BRUNDAGE MANAGEMENT COMPANY, INC.; BENEFIT MANAGEMENT ADMINISTRATORS, INC.; and INETICO, INC. t/a INETICARE, ABC ENTITIES #1-10, | § § § § § § § § § | |
| Defendants. | § | |

ORDER (1) GRANTING BRUNDAGE'S MOTION FOR JUDGMENT ON THE PLEADINGS, (2) GRANTING THE BRUNDAGE PLAN'S MOTION FOR JUDGMENT ON THE PLEADINGS, (3) GRANTING BMA'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND (4) GRANTING IN PART AND DENYING IN PART INETICO'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Before the Court is a Motion to Dismiss for Failure to State a Claim, or in the Alternative, for Summary Judgment filed by Defendant Benefit Management Administrators, Inc. ("BMA") (Dkt. # 23); a Motion to Dismiss, or in the Alternative, for Summary Judgment filed by Defendant Inetico, Inc., t/a

1

Ineticare ("Inetico") (Dkt. # 24); a Motion for Judgment on the Pleadings filed by

Defendant Brundage Management Company, Inc. ("Brundage") (Dkt. # 58); and a

Motion for Judgment on the Pleadings filed by Defendant Brundage Management

Company, Inc. Employee Benefit Plan (the "Brundage Plan") (Dkt. # 59).  The

Court held a hearing on the motions on July 20, 2015.  At the hearing, Alan C.

Milstein, Esq., represented Plaintiffs Kennedy Krieger Institute, Inc., Kennedy

Krieger Children's Hospital, Inc., and Kennedy Krieger Associates, Inc.

(collectively, "Plaintiffs"); G. Wade Caldwell and Bryan D. Bolton, Esqs.,

represented Brundage and the Brundage Plan; George W. Vie, III, Esq.,

represented BMA; and Melanie Fry, Esq., represented Inetico.  After careful

consideration of the supporting and opposing memoranda and the arguments

presented at the hearing, the Court, for the reasons that follow, **GRANTS**

Brundage's Motion for Judgment on the Pleadings, **GRANTS** the Brundage Plan's

Motion for Judgment on the Pleadings, **GRANTS BMA's** Motion to Dismiss, or in

the Alternative for Summary Judgment, and **GRANTS IN PART AND DENIES**

**IN PART** Inetico's Motion to Dismiss, or in the Alternative for Summary

Judgment.

## BACKGROUND

Brundage is a company incorporated in Texas with a principal place

of business in Texas.  ("Compl.," Dkt. # 1 ¶ 4.)  Brundage provides health care

2

benefits to its employees through a self-funded group health plan.  (Id. ¶ 5.)  The

plan designates Brundage as the plan administrator.  (Id. ¶ 14.)  BMA, a company

incorporated in Texas with a principal place of business in Texas, is the plan's

claims administrator.  (Id. ¶ 6, 14.)  BMA's responsibilities include receiving and

reviewing claims from plan participants and health care providers to determine

eligibility for coverage under the plan.  (Dkt. # 23-3 ¶ 3.)  Inetico, a Florida

corporation with its principal place of business in Florida, provides "care

management services" to BMA on behalf of Brundage.  (Compl. ¶ 7; "Koch Aff.,"

Dkt. # 32 ¶ 2.)  Inetico is responsible for the pre-certification of medical

procedures for plan coverage and "utilization review" of hospital stays.  (Koch Aff.

¶ 3.)

      Jane Doe was a Brundage employee covered by the plan.[1]  (Compl.

¶ 15.)  Her minor son, John Doe, was also covered by the plan.  (Id. ¶ 16.)  John

Doe is "developmentally disabled," and at the time in question suffered from

"significant mental health issues including but not limited to significant and

frequent self-injury, aggression, and pica (consumption of non-nutritive substances

such as dirt)."  (Id. ¶¶ 16–17.)  In the fall of 2012, the local physician who had

been treating John Doe believed that his condition was worsening and that further

outpatient treatment would not be effective.  (Id. ¶ 19.)  The physician referred

---

[1] The mother and son in this case are referred to by pseudonyms in the Complaint.

John Doe to Plaintiff Kennedy Krieger Institute, Inc. ("Kennedy Krieger"),[2] which has a "nationally renowned inpatient program for treating children who suffer from severe behavioral dysfunction," for inpatient treatment.  (Id. ¶¶ 18–19.)

In November 2012, Kennedy Krieger's "Neurobehavioral Unit team" evaluated John Doe and determined that he should be admitted.  (Id. ¶ 22.)  On November 21, 2012, Kennedy Krieger submitted an authorization request to Brundage, BMA, and Inetico seeking pre-certification for a four-month admission to the inpatient Neurobehavioral Unit.  (Id. ¶ 23–25.)  Plaintiffs allege that prior to February 14, 2013, Inetico, "individually and on behalf of the other Defendants, represented to the Plaintiffs and their representatives that inpatient services at Kennedy Krieger's Neurobehavioral Unit were covered under the Brundage Plan, and authorized the first seven days of coverage."  (Id. ¶ 27.)  On February 14, Plaintiffs admitted John Doe in reliance on Inetico's representation.  (Id. ¶ 28.)

On February 22, 2013, Inetico told Plaintiffs that further inpatient care of John Doe would not be covered by the plan because it was "not medically necessary."  (Id. ¶ 31.)  Kennedy Krieger's physicians and staff nevertheless continued treating John Doe, believing that he still posed a danger to himself and others and that it would therefore be unethical to release him.  (Id. ¶¶ 30, 32.)  John

---

[2] Kennedy Krieger Institute, Inc. is the parent corporation of Kennedy Krieger Children's Hospital, Inc. and Kennedy Krieger Associates, Inc.  (Compl. ¶ 1.)  All of the Kennedy Krieger entities are non-profit corporations incorporated and headquartered in Maryland.  (Id. ¶ 1–3.)

Doe was successfully treated and released after completing the program.  (Id. ¶ 35.)  The total bill for Plaintiffs' services is $750,000, and remains outstanding. (Id. ¶ 36.)

Jane Doe authorized Plaintiffs to administratively appeal her denial of benefits, and on appeal Defendants determined that the treatment was not medically necessary and denied the appeal.  (Id. ¶ 38–39.)  Plaintiffs further allege that Brundage attempted to dissuade Jane Doe from pursuing the matter further by advising her that it would be bankrupt if forced to pay, and suggested that she would be fired if she pursued the matter.  (Id. ¶ 41.)  As a result, Jane Doe has not assigned to Plaintiffs her right to pursue an enforcement action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  (Id.)

Plaintiffs filed suit in the District of Maryland on May 23, 2014, asserting claims against Brundage, the Brundage Plan, BMA, and Inetico (collectively, "Defendants") for promissory estoppel, breach of contract, fraud (asserted only against Brundage), and violation of the Texas Insurance Code. (Compl. ¶¶ 44–71.)  On March 3, 2015, the Maryland District Court transferred the action to this Court on the basis that it did not have personal jurisdiction over Brundage, BMA, or the Brundage Plan.  (Dkt. # 70.)

Previously pending were Inetico and BMA's respective Motions to Dismiss, or in the Alternative, for Summary Judgment, and Brundage and the Brundage Plan's respective Motions for Judgment on the Pleadings.  Pursuant to the request of Brundage and the Brundage Plan, the Court allowed supplemental briefing to allow the addition of Fifth Circuit and Texas authority in support of or in opposition to the motions.  (Dkt. # 83.)  All parties have submitted supplemental briefing, and the motions are ripe for review.

<u>LEGAL STANDARDS</u>

I.      <u>Motion to Dismiss Under Rule 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  <u>United States ex rel. Vavra v. Kellogg Brown & Root, Inc.</u>, 727 F.3d 343, 346 (5th Cir. 2013) (quoting <u>In re Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

6

the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

II.   Motion for Judgment on the Pleadings

        Under Federal Rule of Civil Procedure 12(c), a party can move for

judgment on the pleadings after the pleadings are closed, so long as the motion

does not delay trial.  Fed. R. Civ. P. 12(c).  A motion for judgment on the

pleadings is subject to the same standards as a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6).  In re Great Lakes Dredge & Dock Co. LLC, 624

F.3d 201, 209–10 (5th Cir. 2010).  Accordingly, "[t]he nonmovant must plead

enough facts to state a claim for relief that is plausible on its face."   United States

v. 0.073 Acres of Land, More or Less, Situate in Parishes of Orleans and Jefferson,

La., 705 F.3d 540, 543 (5th Cir. 2013) (quoting Doe v. MySpace, Inc., 528 F.3d

413, 418 (5th Cir. 2008) (internal quotation marks omitted).  "The central issue is

whether, in the light most favorable to the plaintiff, the complaint states a valid

claim for relief."  Id. (quoting Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.,

313 F.3d 899, 904 (5th Cir. 2002) (internal quotations omitted)).

III.   Motion for Summary Judgment

        A court must grant summary judgment when the evidence

demonstrates "that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In

seeking summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (internal quotation marks omitted).

In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence."  Tiblier v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

<u>DISCUSSION</u>

I.    <u>Promissory Estoppel</u>

    A.    <u>Motions to Dismiss and for Judgment on the Pleadings</u>

        Defendants each argue that Plaintiffs' claims for promissory estoppel are preempted by ERISA.  ERISA's preemption provision provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  "The Supreme Court has observed repeatedly that this broadly worded provision is 'clearly expansive,'" but has "declined to apply an 'uncritical literalism' to the phrase" given that the statutory language "relate to," read broadly, "would encompass virtually all state law." <u>Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.</u>, 662 F.3d 376, 382 (5th Cir. 2011) (quoting <u>Egelhoff v. Egelhoff ex rel. Breiner</u>, 532 U.S. 141, 146 (2001) and <u>N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S. 645, 655 (1995)), <u>aff'd on reh'g</u>, 698 F.3d 229, 230 (5th Cir. 2012) (en banc).  A court conducting a preemption inquiry thus must "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."  <u>Id.</u> (quoting <u>Travelers</u>, 514 U.S. at 656).

        Under the Fifth Circuit's test for determining whether § 1144(a) preempts a state law claim, a defendant pleading preemption must show that "(1) the state law claims address an area of exclusive federal concern, such as the

right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." Id. (quoting Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 246 (5th Cir. 1990)).  State law claims are preempted where they are dependent on and derived from the rights of plan beneficiaries to recover benefits under the terms of the plan. Id. at 383.  State law claims are not preempted, however, when based on alleged misrepresentations by a plan fiduciary to third-party service providers regarding whether or the extent to which a beneficiary is covered by the plan.  Id. at 384.

Plaintiffs' promissory estoppel claim is not preempted by § 1144(a). Plaintiffs allege that "Defendants promised and represented that there was coverage and agreed to pay for the first seven days of inpatient care, and impliedly promised to pay for any additional period of inpatient care that Kennedy Krieger was required to provide in the event that it could not release Mr. Doe."  (Compl. ¶ 48.)  Plaintiffs allege that they reasonably relied on these promises in admitting John Doe, and have been harmed by Defendants' subsequent refusal to pay for the cost of his care.  (Id. ¶¶ 51, 54.)  The substance of the claim is thus that Defendants misrepresented the extent to which services provided by Kennedy Krieger, a third-party provider, to John Doe would be covered by the Brundage Plan.  This

10

claim is neither dependent on nor derived from John Doe's right to recover benefits under the terms of the Brundage Plan, and is thus not preempted under ERISA.

As Plaintiffs point out, this result is directly controlled by the Fifth Circuit's decision in Access Mediquip, L.L.C. v. UnitedHealthcare Insurance Co. In Access, Access Mediquip ("Access"), a third-party services provider, sued United Healthcare Insurance Company ("United"), alleging state law causes of action for promissory estoppel, negligent misrepresentation, violations of the Texas Insurance Code, quantum meruit, and unjust enrichment. 662 F.3d at 377. The first three claims were premised on Access's allegations that it provided services to United beneficiaries "in reliance on United's representations regarding how much, and under what conditions, United would pay Access for those services." Id. at 380. The Fifth Circuit held that the merits of Access's misrepresentation claims did not depend on the rights of the plan beneficiaries, and could be decided by determining, without reference to the plans' terms, the reimbursement Access could have reasonably expected given United's representations and whether United's disposition of the claims was consistent with that expectation. Id. at 385. Here, Plaintiffs' claim for promissory estoppel requires the same analysis: whether Plaintiffs could have reasonably expected reimbursement of the cost of John Doe's inpatient services given the representations made by Defendants.

11

While Defendants characterize Plaintiffs' promissory estoppel claim as disputing the administration of benefits under the Brundage Plan, the merits of the claim "do not depend on whether its services were or were not fully covered under the patients' plans."  Id.  As in Access, "[i]t is immaterial whether the alleged statements regarding the extent that the patients' plans covered [the provided] services were correct or incorrect as descriptions of the plan['s] terms." Id.  Plaintiffs' claimed right to reimbursement does not depend on the terms of the ERISA plans, but on whether Plaintiffs reasonably relied on Defendants' alleged representations that John Doe's inpatient stay would be reimbursed.  As stated by the Fifth Circuit, this type of state law claim

> concern[s] the relationship between the plan and third-party, non-ERISA entities who contact the plan administrator to inquire whether they can expect payment for services they are considering providing to an insured. The administrator's handling of those inquiries is not a domain of behavior that Congress intended to regulate with the passage of ERISA, which "imposes no fiduciary responsibilities in favor of third-party health care providers regarding the accurate disclosure of information, or, indeed, regarding any other matter."

Id. at 385–86 (quoting Memorial, 904 F.2d at 247).  Plaintiffs' promissory estoppel claim is therefore not preempted by § 1144(a).

Defendants finally resort to the argument that Access was wrongly decided.  Even if correct, this Court is bound by the Fifth Circuit's decision, which was affirmed on rehearing en banc.  See Access Mediquip, L.L.C. v.

12

UnitedHealthcare Ins. Co., 698 F.3d 229, 230 (5th Cir. 2012) (en banc).  The Court

further notes that the holding in Access is consistent with substantial authority

from other circuits.  See In Home Health, Inc. v. Prudential Ins. Co. of Am., 101

F.3d 600, 602 (8th Cir. 1996) (holding that provider's claim for negligent

misrepresentation was not preempted by ERISA); Meadows v. Emp'rs Health Ins.,

47 F.3d 1006, 1011 (9th Cir. 1995) (ruling that provider's claims for negligent

misrepresentation and estoppel were not preempted by ERISA); Lordmann Enters.,

Inc. v. Equicor, Inc., 32 F.3d 1529, 1534 (11th Cir. 1994) (holding that ERISA

does not preempt a provider's negligent misrepresentation claim against an

insurer); Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., 944 F.2d 752,

756 (10th Cir. 1991) (holding that provider's promissory estoppel claim based on

representation that coverage was available for plan beneficiary was not preempted

by ERISA).  Defendants are therefore not entitled to judgment on the pleadings or

dismissal under Rule 12(b)(6) on this basis.

   Because Plaintiffs' promissory estoppel claim is not preempted by

ERISA, the Court must address whether Plaintiffs have sufficiently pleaded a

claim for promissory estoppel against each defendant.  The Court must first

determine what law applies.  Plaintiffs argue that Maryland law should govern and

that transfer of the case from the District of Maryland to this Court does not mean

that Texas law should now apply to their claims.  Defendants' supplemental

briefings seem to assume, without arguing, that Texas law should apply.

"A federal court sitting in diversity ordinarily must follow the

choice-of-law rules of the State in which it sits."  <u>Atl. Marine Const. Co., Inc. v.</u>

<u>U.S. Dist. Court for the W. Dist. of Tex.</u>, 134 S. Ct. 568, 582 (2013).  The rules are

somewhat different, however, when an action is transferred from another federal

court.  When a case is transferred pursuant to 28 U.S.C. §1404(a), the state law

applicable in the original court also applies in the transferee court.  <u>Id.</u>  When a

case is transferred from a district court that had no personal jurisdiction over the

defendant or where venue was otherwise improper, on the other hand, the choice-

of-law rules of the transferee state apply.  <u>Nat'l Union Fire Ins. Co. of Pittsburgh,</u>

<u>Pa. v. Am. Eurocopter Corp.</u>, 692 F.3d 405, 408 n.3 (5th Cir. 2012).

Here, the Maryland District Court transferred the action based on its

finding that it did not have personal jurisdiction over Brundage, BMA, and the

Brundage Plan, and therefore Texas choice-of-law rules apply.  While the parties

dispute whether Maryland or Texas law applies here, "[w]here there are no

differences between the relevant substantive laws of the respective states, there is

not conflict, and a court need not undertake a choice of law analysis."  <u>R.R. Mgmt.</u>

<u>Co. v. CFS La. Midstream Co.</u>, 428 F.3d 214, 222 (5th Cir. 2005).

Both Texas and Maryland apply the Second Restatement's definition of promissory estoppel.  <u>Zenor v. El Paso Healthcare Sys., Ltd.</u>, 176 F.3d 847, 864 (5th Cir. 1999) (citing <u>Trammel Crow Co. No. 60 v. Harkinson</u>, 944 S.W.2d 631, 636 (Tex. 1997)); <u>Pavel Enters., Inc. v. A.S. Johnson Co., Inc.</u>, 674 A.2d 521, 532 (Md. 1996).  Under the Restatement approach, to recover on a claim for promissory estoppel, a plaintiff must show "(1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promise; (3) which does induce actual and reasonable action or forbearance by the promise; and (4) causes a detriment which can only be avoided by the enforcement of the promise."  <u>Pavel</u>, 674 A.2d at 532; <u>see also</u> <u>Hartford Fire Ins. Co. v. City of Mont Belvieu, Tex.</u>, 611 F.3d 289, 295 (5th Cir. 2010).  "To support a finding of promissory estoppel, the asserted 'promise' must be sufficiently specific and definite that it would be reasonable and justified for the promisee to rely upon it as a commitment to future action."  <u>Comiskey v. FH Partners, LLC</u>, 373 S.W.3d 620, 635 (Tex. App. 2012); <u>see also</u> <u>Mogavero v. Silverstein</u>, 790 A.2d 43, 51 (Md. App. 2002) (denying promissory estoppel defense where alleged promise was "too vague and indefinite").  Finding no conflict between Texas and Maryland promissory estoppel law, the Court will not undertake a choice-of-law analysis.  <u>See</u> <u>R.R. Mgmt. Co.</u>, 428 F.3d at 222.

It is uncontested that Plaintiffs have sufficiently alleged foreseeable reliance that may only be remedied through enforcement of a promise.  Inetico argues, however, that Plaintiffs' Complaint fails to allege a promise on which Plaintiffs could justifiably rely.  The Complaint alleges that Inetico, "individually and on behalf of the other Defendants, represented to the Plaintiffs and their representatives that inpatient services at Kennedy Krieger's Neurobehavioral Unit were covered under the Brundage Plan, and authorized the first seven days of coverage."  (Compl. ¶ 27.)  In the allegations listed under the promissory estoppel cause of action, Plaintiffs again allege that Inetico, individually and on behalf of the other Defendants, represented to Plaintiffs that "there was coverage for the inpatient services at Kennedy Krieger's Neurobehavioral Unit that Mr. Doe required."  (Id. ¶ 46.)  Plaintiffs allege that "Defendants promised and represented that there was coverage and agreed to pay for the first seven days of inpatient care, and impliedly promised to pay for any additional period of inpatient care that Kennedy Krieger was required to provide in the event that it could not release Mr. Doe."  (Id. ¶ 48.)

The Court finds that these allegations, accepted as true and taken in the light most favorable to Plaintiffs, are sufficient to allege that Inetico promised that Plaintiffs would be reimbursed for one week of care for John Doe.  The allegations that Inetico, on behalf of the other Defendants, "authorized the first

seven days of coverage" and "promised and represented that there was coverage and agreed to pay for the first seven days of inpatient care" sufficiently state a clear and definite promise by Inetico that Defendants would pay for the first seven days of care provided to John Doe. The allegations do not, however, sufficiently allege a promise to pay for Doe's care beyond seven days. The allegation that Defendants "impliedly promised to pay for any additional period of inpatient care" is not supported by any factual allegations as to how the Defendants implied such a promise. The allegation that Defendants represented that Plaintiffs' inpatient services were covered under the beneficiary's plan, without more, does not imply that Defendants promised to reimburse all such inpatient services subsequently provided to the beneficiary. Similarly, the allegation that Defendants promised to pay for the first seven days of inpatient care, without more, does not imply that Defendants promised to pay for inpatient care past the first seven days.

Plaintiffs' cause of action for promissory estoppel claims damages for the entire amount of inpatient care provided to John Doe, which they calculate at over $750,000. (Compl. ¶ 62.) Lacking factual allegations to support the alleged implied promise to pay for inpatient care past the first seven days, the Court finds that Plaintiffs have only alleged a promise of payment by Inetico for the first seven days of inpatient care provided to John Doe. The Court therefore **DISMISSES WITHOUT PREJUDICE** Plaintiffs' promissory estoppel claim against Inetico to

17

the extent it seeks to recover for care provided to John Doe after the first seven days of inpatient care.  To the extent Plaintiffs' promissory estoppel claim seeks to recover for the first seven days of inpatient care, the Court **DENIES** Inetico's Motion to Dismiss.

Because the promissory estoppel claims against the additional three defendants are based on Inetico's alleged representations, dismissal of the claim with respect to Inetico requires dismissal of the claim with respect to the remaining defendants as well.  Brundage and the Brundage Plan additionally argue that the allegation "on behalf of the other Defendants" is insufficient to plead an agency relationship between Inetico and the other Defendants, and that Plaintiffs' allegations based on Inetico's representations therefore also fail to state a claim against the other Defendants on this basis.[3]

A principal-agent relationship, under which a principal may be held vicariously liable for the acts of his agent, requires that the principal has the right

---

[3] The Court notes that this argument, while not made by BMA in its briefs, applies equally to BMA.  The Court further notes that this question is not controlled by the Maryland District Court's previous finding that Plaintiffs had not pleaded specific facts of an agency relationship sufficient to support personal jurisdiction over BMA, Brundage, or the Brundage Plan.  (See Dkt. # 70 at 12.)  Whether a plaintiff has established personal jurisdiction over a defendant by a preponderance of the evidence is a distinct legal inquiry from whether a plaintiff has pleaded sufficient factual matter to state a claim, and the Maryland District Court's finding with regard to personal jurisdiction thus does not control this Court's determination of whether the Complaint's allegations can withstand a motion to dismiss for failure to state a claim or for judgment on the pleadings.

to control the agent.  See St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 541–42 (Tex. 2003); Green v. H&R Block, Inc., 735 A.2d 1039, 1047–48 (Md. 1999).  Other than the allegations that Inetico's representations were made "on behalf of the other defendants," the only allegations relating to Inetico's relationship with the other Defendants is that "Ineticare provides third-party administration services on behalf of some or all of the foregoing entities."  (Compl. ¶ 14.)  Without more, Plaintiffs have not pleaded sufficient factual content to allow the Court to draw the reasonable inference that Inetico was an agent, rather than an independent contractor, of Brundage, the Brundage Plan, or BMA, and thus that the other Defendants are liable for Plaintiffs' reliance on Inetico's alleged representations. The Court therefore **DISMISSES WITHOUT PREJUDICE** Plaintiffs' promissory estoppel claim as asserted against Brundage, the Brundage Plan, and BMA.

     B.    <u>Inetico's Motion for Summary Judgment</u>

       Because Plaintiffs' promissory estoppel claim against Inetico for recovery of the first seven days of inpatient care provided to John Doe is not subject to dismissal under Rule 12(b)(6), the Court will address Inetico's motion in the alternative for summary judgment on this claim.  Inetico has submitted the affidavit of Janet Koch ("Koch"), Inetico's Clinical Director of Care Management, and exhibits consisting of correspondence between Kennedy Krieger, Inetico, and

John Doe.  Plaintiffs have not submitted any additional evidence.  Because the discussion up to this point has been limited to the allegations in Plaintiffs' Complaint, the Court will set out the relevant facts supported by the summary judgment record.

On November 21, 2012, Kennedy Krieger's Neurobehavioral Unit sent a letter requesting pre-certification for a four-month inpatient admission for John Doe.  (Koch Aff. ¶ 4; Dkt. # 24-4, Ex. A.)  On November 30, 2012, Inetico replied in a letter stating that it was unable to certify the proposed treatment because the patient did not meet the criteria for inpatient care.  (Koch Aff. ¶ 5; Dkt. # 24-5, Ex. B.)  Kennedy Krieger appealed the denial of pre-certification on January 3, 2013.  (Koch Aff. ¶ 7; Dkt. # 24-7, Ex. D.)

On January 8, 2013, Inetico, at BMA's instruction, "told Kennedy Krieger that seven days of inpatient treatment would be covered, subject to further evaluation of the patient's condition and needs for treatment."  (Koch Aff. ¶ 9.) Kennedy Krieger responded that the seven-day approval was "unacceptable in its view of the needs of the patient," and Inetico subsequently arranged for physician review of whether the proposed inpatient treatment was medically necessary and covered by the Plan.  (Id. ¶¶ 10–11.)  The physician reviewer concluded that the patient's needs could be met on an outpatient basis, and on January 17, 2013, Inetico informed Kennedy Krieger that while its review had found that four to five

20

months of inpatient treatment was not necessary, the "seven days with concurrent

review had been approved." (Id. ¶¶ 12–13.)

On February 8, 2013, Kennedy Krieger informed Inetico that it had a

bed available for John Doe, and Inetico confirmed that the seven-day admission

with concurrent review was still authorized. (Koch Aff. ¶ 16.) John Doe was

admitted on February 14, 2013. (Id. ¶ 17.) On February 22, 2013, Inetico advised

Kennedy Krieger that the patient's condition did not meet the criteria for continued

stay and denied certification of continued inpatient treatment. (Id. ¶ 18; Dkt.

# 24-9, Ex. F.) Kennedy Krieger nevertheless continued to provide inpatient care

to John Doe and appealed the decision. (Koch. Aff. ¶¶ 20–21.)

On April 30, 2013, Inetico sent a letter to the patient, copied to

Kennedy Krieger, stating that it could not certify the continued inpatient treatment

because it did not "meet the standard of medical necessity under the Plan

Language." (Id. ¶ 22; Dkt. # 24-10, Ex. G.) Finally, on May 28, 2013, Inetico sent

a letter to the patient, copied to Kennedy Krieger, stating that it was "unable to

uphold the original decision to certify the treatment proposed/provided because

[t]he inpatient stay for dates 2/14/13 through 2/21/13 are not considered to be

medically necessary." (Koch Aff. ¶ 23; Dkt. # 24-11, Ex. H.)

As stated above, to recover on a claim for promissory estoppel, a

plaintiff must show "(1) a clear and definite promise; (2) where the promisor has a

21

reasonable expectation that the offer will induce action or forbearance on the part of the promise; (3) which does induce actual and reasonable action or forbearance by the promise; and (4) causes a detriment which can only be avoided by the enforcement of the promise." Pavel, 674 A.2d at 532; Hartford Fire, 611 F.3d at 295. Here, Inetico argues that it is entitled to summary judgment because Plaintiffs have not shown that their reliance on Inetico's representation that the first seven days of John Doe's inpatient treatment would be covered was reasonable. According to Inetico, pre-certification does not guarantee payment of a claim, and thus cannot be reasonably relied upon as a promise of payment by Plaintiffs.

The record indicates that Inetico, after initially declining to certify four months of inpatient treatment for John Doe, "told Kennedy Krieger that seven days of inpatient treatment would be covered, subject to further evaluation of the patient's condition and needs for treatment." (Koch Aff. ¶¶ 5, 9.) Inetico later confirmed, on two different occasions, that the first seven days of "treatment with concurrent review" was approved. (Id. ¶¶ 13, 16.) While the record includes documentation of Inetico's November 30, 2012 refusal to certify four months of inpatient treatment, its February 22, 2013 refusal to certify continued inpatient treatment after the first seven days, its April 30, 2013 denial of Kennedy Krieger's appeal, and its reversal of its initial decision to certify the first seven days of

treatment, the evidence concerning its certification of the first seven days of treatment is limited to the Koch affidavit.

The Court finds that Inetico has not met its burden to establish that there is no genuine dispute of material fact.  Koch's testimony that Inetico represented that the first seven days of inpatient treatment "would be covered," and that Inetico subsequently confirmed that the first seven days of treatment had been approved, creates a genuine dispute of material fact as to whether Plaintiffs' reliance on Inetico's representation of coverage was reasonable.  Even if pre-certification does not guarantee payment of a claim, as argued by Inetico, there is no evidence in the record indicating that Inetico's representation was a formal pre-certification.  The evidence shows only that Inetico represented that the first week of inpatient treatment would be covered by John Doe's benefits plan.  To the extent that Inetico argues that its representation that seven days of treatment would be covered was limited by the fact that it was "subject to further evaluation of the patient's condition and needs for treatment," that qualifying language could reasonably be understood to refer to additional treatment subsequent to the first seven days.  The record therefore does not establish that Plaintiffs' reliance on Inetico's coverage was unreasonable as a matter of law.

Inetico argues that St. Luke's Episcopal Hospital v. Acordia National supports granting summary judgment here.  In that unreported case, the district

court granted summary judgment to a third-party plan administrator on a hospital's

claim for negligent misrepresentation based on the administrator's alleged

misrepresentation that services provided to a plan beneficiary were covered.  No.

H-05-1438, 2007 WL 508936, *13–14 (S.D. Tex. Feb. 13, 2007).  The district

court found that the hospital had not justifiably relied on the administrator's

representation of coverage where the administrator gave a detailed disclaimer to

the effect that the summary of benefits was not a guarantee of payment.  Id.  Here,

however, there is no evidence that Inetico's representation that the first seven days

of John Doe's inpatient care would be covered was accompanied by any

disclaimer, much less a detailed one.  While Inetico points to language in the

Brundage Plan's Summary Plan Description that pre-certification does not

guarantee payment of any claims, there is no evidence in the record suggesting that

Kennedy Krieger had a copy of the plan description or otherwise knew the terms of

John Doe's beneficiary plan.[4]

      Inetico also cites Provident American Insurance Co. v. Casteneda, a

Texas Supreme Court case, for the proposition that pre-approval cannot constitute

a misrepresentation of the terms of an insurance policy.  That case, however, is far

---

[4] While the email from Inetico's Clinical Director of Care Management to
Kennedy Krieger states that there is plan language attached to the email, the
attached language is not described and is not a part of the summary judgment
record.  (Dkt. # 24-8, Ex. E.)  Koch attests that the plan language related to "the
approval criteria for inpatient psychiatric care," but does not indicate whether the
disclaimer language regarding pre-certification was included.  (Koch Aff. ¶ 15.)

more limited.  First, the court's decision was made in the context of a claim

brought under the Texas Insurance Code and the Deceptive Trade Practices Act,

and ruled that the pre-approval in that case was not actionable under those statutes.

988 S.W.2d 189, 199 (Tex. 1998).  The claim here, by contrast, is a common law

claim based on promissory estoppel.  Second, the court did not hold that a

pre-approval could never constitute a misrepresentation, but only that the

pre-approval in that case was not a misrepresentation given that the insurance

company lacked facts that were material to the determination of whether the

beneficiary was covered.  Id. at 200.  There is no evidence or argument that Inetico

lacked material information with regard to whether John Doe's first seven days of

treatment would be covered.  Indeed, when Inetico reversed its decision to certify

the seven days of inpatient treatment, part of the basis for its reversal was that the

Plan did not cover "services that are focused on behavioral modification,

speech/communication difficulties, and developmental delays"—information

which was known to it at the time of its representation to Plaintiffs.  (Dkt. # 24-11,

Ex. H.)

            Because Inetico has not shown that there is no genuine dispute of

material fact as to whether Plaintiffs' reliance on its representation of coverage as

to the first seven days of John Doe's inpatient care was justified, it is not entitled to

judgment as a matter of law on Plaintiffs' claim for promissory estoppel.  The

Court therefore **DENIES** Inetico's Motion for Summary Judgment on this claim.

II.     Breach of Contract

          Defendants also argue, and Plaintiffs' counsel conceded at the

hearing, that Plaintiffs' breach of contract claim is preempted by § 1144(a).

Plaintiffs allege that the Brundage Plan "constitutes a contract" between Brundage

and its employees "established for the benefit of, among others," health care

providers reimbursed for providing services to plan beneficiaries.  (Compl. ¶¶ 57–

58.)  Plaintiffs further allege that the Brundage Plan provides coverage for

inpatient treatment such as that provided by Plaintiffs to John Doe, and that

Defendants breached the contract by failing to pay for Doe's treatment.  (Id. ¶¶ 60–

61.)  This claim, in contrast to Plaintiffs' claim for promissory estoppel, depends

on the allegation that the plan required the Brundage Plan to cover John Doe's

inpatient stay at Kennedy Krieger, and thus to reimburse Plaintiffs.  Because

Plaintiffs can recover as third-party beneficiaries only to the extent that the alleged

contract in question provides coverage to a plan beneficiary for the services

provided, Plaintiffs' breach of contract claim is "dependent on, and derived from,

the rights of the plan beneficiar[y] to recover benefits under the terms of the plan."

Access, 662 F.3d at 383.  Plaintiffs' breach of contract claim is therefore

preempted by ERISA.  The Court therefore **DISMISSES** Plaintiffs' claim for

breach of contract.

III.    <u>Texas Insurance Code</u>

      Brundage argues that Plaintiffs' claims under the Texas Insurance

Code are also preempted by ERISA.  Under § 1144(b), an ERISA plan "shall [not]

be deemed to be an insurance company or other insurer, bank, trust company, or

investment company or to be engaged in the business of insurance or banking for

purposes of any law of any State purporting to regulate insurance companies,

insurance contracts, banks, trust companies, or investment companies."

§ 1144(b)(2)(B).  This provision exempts ERISA plans, including self-funded

ERISA plans such as Brundage's, from state regulation "insofar as that regulation

'relates to' the plans."  <u>FMC Corp. v. Holliday</u>, 498 U.S. 52, 61 (1990).

      In <u>Access</u>, the Fifth Circuit held that claims brought under the Texas

Insurance Code were not preempted where the statutory claims were based on

alleged misrepresentations made by ERISA plan fiduciaries to a third-party

provider.  662 F.3d at 384–85.  Such misrepresentation claims do not seek to

regulate the administration of ERISA plans or the fiduciary duties of plan

administrators toward such plans, but merely the representations ERISA entities

make to third parties about the extent to which they will pay for their services.  <u>Id.</u>

at 385.  To the extent that Plaintiffs' Texas Insurance Code claim is based on the

misrepresentations alleged in its promissory estoppel claim, it would not be preempted by ERISA.  The Court, however, is unable to determine Plaintiffs' basis for this claim.  First, the part of the Texas Insurance Code cited in Plaintiffs' Complaint was recodified in 2003, see Tex. Mut. Ins. Co. v. Ruttinger, 381 S.W.3d 430, 435 n.3 (Tex. 2012), and it is therefore unclear on which current provision of the Code this cause of action rests.  Additionally, the factual allegations for the claim are limited to "Defendants' conduct, as described above."  (Compl. ¶ 71.)  Because the allegations "described above" include distinct factual circumstances (those underlying the promissory estoppel claim and those underlying the claim for fraud), it is not clear which allegations form the foundation of the Texas Insurance Code claim.

As pleaded, Plaintiffs' claim under the Texas Insurance Code fails to provide notice of the nature of their claim and leaves the Court unable to determine whether the claim is preempted by ERISA.  The Court therefore **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claim under the Texas Insurance Code.

IV.    Fraud Claim Against Brundage

Brundage further argues that Plaintiffs' claim against it for fraud should be dismissed because Plaintiffs have failed to plead fraud with particularity.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other

conditions of a party's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

"Pleading fraud with particularity in this circuit requires time, place and contents

of the false representations, as well as the identity of the person making the

misrepresentation and what that person obtained thereby."  Williams v. WMX

Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997).  While the pleading requirements

of Rule 9(b) "may be to some extent relaxed where . . . the facts relating to the

alleged fraud are peculiarly within the perpetrator's knowledge," the complaint

must set forth some factual basis for the claim even when alleged based on

information and belief.  U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.,

336 F.3d 375, 385 (5th Cir. 2003).

       In their claim for fraud, Plaintiffs allege that "Brundage falsely

advised Ms. Doe that it would be bankrupt if ordered to pay, and she would be

fired, and as a result Ms. Doe has not assigned her rights to pursue a § 502(a)

enforcement action to the Plaintiffs."  (Compl. ¶ 64.)  Plaintiffs similarly allege

that, "[i]n an attempt to dissuade Ms. Doe from pursuing the matter any further . . .

Brundage falsely advised Ms. Doe that it would be bankrupt if ordered to pay, and

suggested that she would be fired if she pursued the matter further."  (Id. ¶ 41.)

Plaintiffs further allege that Brundage made the foregoing false statements and

fraudulent misrepresentations with the knowledge that they were false and with the

intent that Ms. Doe rely upon them.  (Id. ¶¶ 65–66.)

Plaintiffs' allegations thus set forth the contents of the alleged misrepresentation—that Brundage would be bankrupt if forced to reimburse Plaintiffs for John Doe's care—and what Brundage obtained—Jane Doe's refusal to assign her ERISA rights to Plaintiffs.  They fail, however, to specify who made the alleged misrepresentation and where and when it occurred.  While Plaintiffs argue that these specifics are solely within Brundage's knowledge, their allegations make clear that the alleged misrepresentation was made to a third party—Jane Doe. Because the facts relating to the alleged fraud are available through Jane Doe, they are not "peculiarly within the perpetrator's knowledge," and Plaintiffs must satisfy the full rigor of the Rule 9(b) pleading standard.  See U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp., 193 F.3d 304, 308 (5th Cir. 1999) (holding that plaintiff was not entitled to the relaxed 9(b) pleading standard because documents containing the required information were in the possession of third parties), abrogated on other grounds by U.S. ex rel. Eisenstein v. City of N.Y., N.Y, 556 U.S. 928 (2012).  Having failed to do so, Plaintiffs' claim for fraud is subject to dismissal.

While a court generally grants leave to amend after dismissal for failure to meet the heightened pleading requirements for fraud, Hart v. Bayer Corp., 199 F.3d 239, 247 n.6 (5th Cir. 2000), the defect in Plaintiffs' fraud claim is not only technical.  "[A] person who makes a misrepresentation is liable to the

30

person or class of persons the maker intends or has reason to expect will act in reliance on the misrepresentation."  Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 578 (Tex. 2001); Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A., 929 A.2d 932, 945 (Md. 2007).[5]  A person who makes a misrepresentation is also liable where the person makes a fraudulent representation to a third person and intends or has reason to expect that its substance will be communicated to another who will rely upon it.  Neuhaus v. Kain, 557 S.W.2d 125, 138 (Tex. Civ. App. 1977); Diamond Point, 929 A.2d at 946.

Here, Plaintiffs have not alleged that Brundage intended or expected that Plaintiffs would rely upon Brundage's alleged misrepresentation to Jane Doe. They instead allege that Brundage made fraudulent misrepresentations to Jane Doe "with the intent that Ms. Doe rely upon them."  (Compl. ¶ 66.)  Plaintiffs also allege that Jane Doe relied on Brundage's false statements, but do not allege that they, Plaintiffs, relied on the false statements.  (Id. ¶ 67.)  While Jane Doe may have a cause of action for fraud based on the alleged facts, Plaintiffs have no right to recover for an alleged fraud committed against a third party.  See, e.g., Westcliff Co. v. Wall, 267 S.W.2d 544, 546 (Tex. 1954) ("A person making a representation is only accountable for its truth or honesty to the very person or persons he seeks to

---

[5] Because both Texas and Maryland follow the Second Restatement of Torts with respect to claims for fraud, the Court need not conduct a choice-of-law analysis with respect to Plaintiffs' fraud claim.  See R.R. Mgmt. Co., 428 F.3d at 222.

influence . . . .").  Lacking allegations that Brundage knew or expected that

Plaintiffs would act in reliance on its alleged misrepresentation, and that Plaintiffs

relied on the misrepresentation, Brundage is not liable to Plaintiffs for fraud for

misrepresentations allegedly made to Jane Doe.  The Court therefore **DISMISSES**

Plaintiffs' fraud claim.

V.     Claims Against the Brundage Plan

        Finally, Brundage Plan further argues that it is entitled to judgment on

the pleadings because it lacks the capacity to be sued under the common law,

asserting that the "express limitation" of 29 U.S.C. § 1132(d)(1) precludes suit

against an ERISA plan except where suit is brought under the ERISA statute.

Under § 1132(d), "[a]n employee benefit plan may sue or be sued under this

subchapter as an entity."  § 1132(d)(1).  Nothing in the provision restricts suits

against an ERISA plan to causes of action brought under ERISA or otherwise

states whether an employee benefit plan may sue or be sued based on non-ERISA

claims.  The additional language in § 1132(d)(1) simply sets out the means for

service of process.  See id.  Further, the Supreme Court has stated that ERISA

plans may be sued for "run-of-the-mill state-law claims," noting that they are

"relatively commonplace."  Mackey v. Lanier Collection Agency & Serv., Inc.,

486 U.S. 825, 833 (1988).  Even if the Supreme Court's assertion in Mackey was

dictum, the Brundage Plan has cited no authority, and certainly no "express

statutory language," suggesting that actions against an ERISA plan are limited to those brought under ERISA.  The Brundage Plan is therefore not entitled to judgment on the pleadings on this basis, and the dismissal of Plaintiffs' claims against the Brundage Plan for promissory estoppel and under the Texas Insurance Code, discussed above, is without prejudice.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Brundage's Motion for Judgment on the Pleadings (Dkt. # 58), **GRANTS** the Brundage Plan's Motion for Judgment on the Pleadings (Dkt. # 59), **GRANTS BMA's** Motion to Dismiss, or in the Alternative for Summary Judgment (Dkt. # 23), and **GRANTS IN PART AND DENIES IN PART** Inetico's Motion to Dismiss, or in the Alternative for Summary Judgment (Dkt. # 24).

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, July 27, 2015.

David Alan Ezra
Senior United States District Judge