UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KENNEDY KRIEGER INSTITUTE, INC.; KENNEDY KRIEGER CHILDREN'S HOSPITAL, INC.; and KENNEDY KRIEGER ASSOCIATES, INC., | § § § § § § | CV. No. 5:15-CV-162-DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| BRUNDAGE MANAGEMENT COMPANY, INC. EMPLOYEE BENEFIT PLAN; BRUNDAGE MANAGEMENT COMPANY, INC.; BENEFIT MANAGEMENT ADMINISTRATORS, INC.; and INETICO, INC. t/a INETICARE, ABC ENTITIES #1-10, | § § § § § § § § § | |
| Defendants. | § | |

ORDER (1) GRANTING IN PART AND DENYING IN PART BRUNDAGE
AND THE BRUNDAGE PLAN'S MOTION TO DISMISS, (2) GRANTING
BMA'S MOTION TO DISMISS, AND (3) GRANTING IN PART AND
DENYING IN PART INETICO'S MOTION TO DISMISS

Before the Court are a Motion to Dismiss filed by Defendants

Brundage Management Company, Inc. ("Brundage") and Brundage Management

Company, Inc. Employee Benefit Plan (the "Brundage Plan") (Dkt. # 104); a

Motion to Dismiss filed by Defendant Benefit Management Administrators, Inc.

("BMA") (Dkt. # 106); and a Motion to Dismiss filed by Defendant Inetico, Inc. t/a

Ineticare ("Inetico") (Dkt. # 105).  The Court held a hearing on the Motions on November 16, 2015.  At the hearing, Alan Milstein, Esq., represented Plaintiffs Kennedy Krieger Institute, Inc.; Kennedy Krieger Children's Hospital, Inc.; and Kennedy Krieger Associates, Inc. (collectively, "Plaintiffs").  Bryan Bolton, Esq., represented Brundage and the Brundage Plan; George W. Vie, III, Esq., represented BMA; and Melanie Fry, Esq., represented Inetico.  After careful consideration of the supporting and opposing memoranda and the arguments presented at the hearing, the Court, for the reasons that follow, **GRANTS IN PART AND DENIES IN PART** Brundage and the Brundage Plan's Motion to Dismiss, **GRANTS** BMA's Motion to Dismiss, and **GRANTS IN PART AND DENIES IN PART** Inetico's Motion to Dismiss.

BACKGROUND

Brundage is a company incorporated in Texas with a principal place of business in Texas.  ("Am. Compl.," Dkt. # 102 ¶ 4.)  Brundage provides health care benefits to its employees through a self-funded group health plan.  (Id. ¶ 5.) The plan designates Brundage as the plan administrator.  (Id. ¶ 14.)  BMA, a company incorporated in Texas with a principal place of business in Texas, is the plan's claims administrator.  (Id. ¶ 6, 14.)  BMA's responsibilities include receiving and reviewing claims from plan participants and health care providers to determine eligibility for coverage under the plan.  (Dkt. # 23-3 ¶ 3.)  Inetico, a

2

Florida corporation with its principal place of business in Florida, provides "care management services" to BMA on behalf of Brundage.  (Am. Compl. ¶ 7; "Koch Aff.," Dkt. # 32 ¶ 2.)  Inetico is responsible for the pre-certification of medical procedures for plan coverage and "utilization review" of hospital stays.  (Koch Aff. ¶ 3.)

Jane Doe was a Brundage employee covered by the plan.[1]  (Am. Compl. ¶ 17.)  Her minor son, John Doe, was also covered by the plan.  (Id. ¶ 18.)  John Doe is developmentally disabled, and at the time in question suffered from "significant mental health issues including but not limited to significant and frequent self-injury, aggression, and pica (consumption of non-nutritive substances such as dirt)."  (Id. ¶¶ 18–19.)  In the fall of 2012, the local physician who had been treating John Doe believed that his condition was worsening and that further outpatient treatment would not be effective.  (Id. ¶ 21.)  The physician referred John Doe to Plaintiff Kennedy Krieger Institute, Inc. ("Kennedy Krieger"),[2] which has a "nationally renowned inpatient program for treating children who suffer from severe behavioral dysfunction," for inpatient treatment.  (Id. ¶¶ 20–21.)

---

[1] The mother and son in this case are referred to by pseudonyms in the Complaint.

[2] Kennedy Krieger Institute, Inc. is the parent corporation of Kennedy Krieger Children's Hospital, Inc. and Kennedy Krieger Associates, Inc.  (Am. Compl. ¶ 1.) All of the Kennedy Krieger entities are non-profit corporations incorporated and headquartered in Maryland.  (Id. ¶ 1–3.)

In November 2012, Kennedy Krieger's "Neurobehavioral Unit team" evaluated John Doe and determined that he should be admitted. (Id. ¶ 24.) On November 21, 2012, Kennedy Krieger submitted an authorization request to Brundage, BMA, and Inetico seeking pre-certification for a four-month admission to the inpatient Neurobehavioral Unit. (Id. ¶ 25–26.) Plaintiffs allege that prior to February 14, 2013, Inetico,

> acting individually and on behalf of the other Defendants, acting as the agent of the other Defendants, and acting under the control of and at the direction of the other Defendants, represented to the Plaintiffs and their representatives that inpatient services at Kennedy Krieger's Neurobehavioral Unit were covered under the Brundage Plan, authorized the first seven days of coverage, and promised that the coverage would continue so long as it continued to be medically necessary . . . .

(Id. ¶ 29.) On February 14, Plaintiffs admitted John Doe in reliance on Inetico's representation. (Id. ¶ 31.)

Plaintiffs allege that on February 22, 2013, Inetico "disingenuously and in bad faith claimed that the inpatient treatment was 'not medically necessary' then or at any prior time." (Id. ¶ 34.) Kennedy Krieger's physicians and staff nevertheless continued treating John Doe, believing that he still posed a danger to himself and others and that it would therefore be unethical to release him. (Id. ¶¶ 37.) John Doe was successfully treated and released after completing the program. (Id. ¶ 40.) The total bill for Plaintiffs' services is $750,000, and remains outstanding. (Id. ¶ 41.)

4

Jane Doe authorized Plaintiffs to administratively appeal her denial of benefits, and on appeal Defendants determined that the treatment was not medically necessary and denied the appeal.  (Id. ¶ 43–44.)  Plaintiffs further allege that Brundage attempted to dissuade Jane Doe from pursuing the matter further by advising her that Brundage would be bankrupt if forced to pay, and suggested that she would be fired if she pursued the matter.  (Id. ¶ 46.)  As a result, Jane Doe has not assigned to Plaintiffs her right to pursue an enforcement action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  (Id.)

Plaintiffs filed suit in the District of Maryland on May 23, 2014, asserting claims against Brundage, the Brundage Plan, BMA, and Inetico (collectively, "Defendants") for promissory estoppel, breach of contract, fraud, and violations of the Texas Insurance Code.  (Dkt. # 1 ¶¶ 44–71.)  On March 3, 2015, the Maryland District Court transferred the action to this Court on the basis that it did not have personal jurisdiction over Brundage, BMA, or the Brundage Plan.  (Dkt. # 70.)

After a hearing on Defendants' respective motions to dismiss and for judgment on the pleadings, the Court entered an Order ruling on the motions on July 27, 2015.  (Dkt. # 101.)  The Court's Order dismissed Plaintiffs' claims for breach of contract and fraud with prejudice, dismissed Plaintiffs' claim for

violations of the Texas Insurance Code without prejudice, and dismissed Plaintiffs' claim for promissory estoppel against Brundage, the Brundage Plan, and BMA without prejudice.  (Id.)  The Court further dismissed Plaintiffs' promissory estoppel claim against Inetico to the extent that Plaintiffs sought recovery for the cost of Doe's care beyond the first seven days of care.  (Id.)  The Court found that Plaintiffs had stated a claim for promissory estoppel against Inetico, however, with respect to the first seven days of care.  (Id.)

Plaintiffs filed an Amended Complaint on August 17, 2015.  (Dkt. # 102.)  The Amended Complaint alleges promissory estoppel as the sole cause of action against Defendants.  (Am. Compl. ¶¶ 49–60.)  Defendants filed their respective Motions to Dismiss for failure to state a claim on September 3, 2015. (Dkt. ## 104, 105, 106.)  Plaintiffs filed an omnibus Response in opposition, and Brundage and Inetico filed Replies.  (Dkt. ## 109, 110, 111.)

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d

191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the

plaintiff must plead "enough facts to state a claim to relief that is plausible on its

face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

<u>DISCUSSION</u>

Defendants argue they are entitled to dismissal of Plaintiffs'

promissory estoppel claim to recover the cost of care provided to John Doe beyond

the first seven days of care.  Defendants specifically argue that Plaintiffs have

failed to state a promissory estoppel claim for care provided after the first seven

days, and that even if Plaintiffs have stated such a claim, it is preempted by

ERISA.[3]  Brundage further argues that it cannot be sued on common law claims in

its capacity as an ERISA plan sponsor and administrator.  Finally, Inetico argues

that Plaintiffs' claim should be dismissed because Plaintiffs failed to separately

plead the amount of alleged damages for the first seven days of care and the

---

[3] The Court previously dismissed without prejudice Plaintiffs' promissory estoppel
claim against Brundage, the Brundage Plan, and BMA for the cost of the first
seven days of care based on Plaintiffs' failure to sufficiently plead that Inetico was
acting as the other Defendants' agent.  (Dkt. # 101 at 18–19.)  Plaintiffs' Amended
Complaint includes specific factual allegations with respect to Inetico's alleged
agency relationship with the other Defendants, and Defendants have not challenged
Plaintiffs' promissory estoppel claim for the first seven days of care on this basis.

amount for care provided after the first seven days.  The Court will first address the issue of ERISA preemption.

I.     ERISA Preemption

ERISA's preemption provision provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  "The Supreme Court has observed repeatedly that this broadly worded provision is 'clearly expansive,'" but has "declined to apply an 'uncritical literalism' to the phrase" given that the statutory language "relate to," read broadly, "would encompass virtually all state law."  Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co., 662 F.3d 376, 382 (5th Cir. 2011) (quoting Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 146 (2001) and N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995)), aff'd on reh'g, 698 F.3d 229, 230 (5th Cir. 2012) (en banc). A court conducting a preemption inquiry thus must "look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."  Id. (quoting Travelers, 514 U.S. at 656).

Under the Fifth Circuit's test for determining whether § 1144(a) preempts a state law claim, a defendant pleading preemption must show that "(1) the state law claims address an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims

8

directly affect the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." Id. (quoting Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 246 (5th Cir. 1990)).  State law claims are preempted where they are dependent on and derived from the rights of plan beneficiaries to recover benefits under the terms of the plan. Id. at 383.  State law claims are not preempted, however, when based on alleged misrepresentations by a plan fiduciary to third-party service providers regarding whether or the extent to which a beneficiary is covered by the plan.  Id. at 384.

In its previous Order, the Court found that Plaintiffs' promissory estoppel claim to recover the costs of the first seven days of John Doe's care was not preempted by § 1144(a).  (Dkt. # 101 at 10.)  Plaintiffs' allegations that Defendants "promised and represented that there was coverage and agreed to pay for the first seven days of inpatient care," and that Plaintiffs reasonably relied on Defendants' promises in admitting John Doe, are neither dependant on nor derived from John Doe's right to recover benefits under the terms of the Brundage Plan, and are thus not preempted by ERISA.  (Id. at 10–11.)  As in Access Mediquip, L.L.C. v. UnitedHealthcare Insurance Co., 662 F.3d 376 (5th Cir. 2011), aff'd on reh'g en banc, 698 F.3d 229 (2012), Plaintiffs' promissory estoppel claim for the first seven days of care can be decided without reference to the plans' terms or the rights of plan beneficiaries.  (Dkt. # 101 at 11–12.)

The Court also found, however, that Plaintiffs had not pleaded sufficient facts to support the allegation that Defendants promised to pay for care provided to John Doe after the first seven days.  (<u>Id.</u> at 17.)  To address this deficiency, Plaintiffs' Amended Complaint alleges that Inetico,

> acting as the agent of the other Defendants, represented to the Plaintiffs and their representatives that inpatient services at Kennedy Krieger's Neurobehavioral Unit were covered under the Brundage Plan, authorized the first seven days of coverage, and promised that coverage would continue so long as it continued to be medically necessary for Mr. Doe to stay in the inpatient Neurobehavioral Unit.
>
> This promise . . . was a promise that the services were covered under the Plan and that in seven days it would review whether inpatient treatment was <u>still</u> necessary.

(Am. Compl. ¶¶ 29–30 (emphasis in original).)  Plaintiffs further allege that the self-injurious behavior that justified John Doe's initial admission remained present on the seventh day of admission, that continued inpatient treatment remained medically necessary, and that Defendants nevertheless refused to pay for the cost of continued inpatient treatment.  (<u>Id.</u> ¶¶ 32, 34–37.)

Defendants argue that as pleaded, Plaintiffs' promissory estoppel claim for recovery beyond the first seven days of care is preempted by ERISA because it requires a determination of whether continued care was "medically necessary" under the terms of the plan.  The Court agrees.  State law claims based on alleged misrepresentations by a plan fiduciary to a third-party service provider regarding whether, or the extent to which, a beneficiary is covered by the plan are

independent of the rights of plan beneficiaries to receive benefits under the plan. Access, 662 F.3d at 383.  Because such claims do not depend on whether the provider's services were covered under the patients' plans, but instead on whether the provider reasonably relied on the representations of a plan fiduciary, they are not preempted by ERISA.  Id. at 385.  By contrast, a state law claim that implicates the right to receive benefits under the terms of an ERISA plan and affects the relationship between the plan and its fiduciaries is preempted.  Id. at 382.  "[A]ny determination of benefits under the terms of a plan—i.e., what is 'medically necessary' or a 'Covered Service'—[] fall[s] within ERISA."  Lone Star OB/GYN Assocs. v. Aetna Health Inc., 579 F.3d 525, 531 (5th Cir. 2009).

Plaintiffs' claim for promissory estoppel with respect to care provided after the first seven days is preempted because it depends on whether the services it provided during that period were covered under the terms of John Doe's plan.  The basis for Plaintiffs' claim is that Inetico, as agent for the other Defendants, promised that coverage for Kennedy Krieger's inpatient services "would continue so long as it continued to be medically necessary."  (Am. Compl. ¶ 29.)  To recover on its claim, Plaintiffs must show that the harm caused by its reasonable reliance on this promise "can only be avoided by the enforcement of the promise."[4]

---

[4] As noted in the Court's previous Order, the parties dispute whether Maryland or Texas law applies to Plaintiffs' claim.  (Dkt. # 101 at 14.)  Because both states apply the Second Restatement's definition of promissory estoppel, Zenor v. El

Pavel Enters., Inc. v. A.S. Johnson Co., Inc., 674 A.2d 521, 532 (Md. 1996); see also Hartford Fire Ins. Co. v. City of Mont Belvieu, Tex., 611 F.3d 289, 295 (5th Cir. 2010).  Whether equity requires enforcing the promise necessarily depends on what was promised, and whether a defendant failed to fulfill that promise.  Here, what Defendants allegedly promised, and whether they failed to fulfill that promise, requires determining the meaning of "medically necessary" under the terms of John Doe's plan—and by extension, whether Kennedy Krieger's services after the first seven days of inpatient care were covered by the plan.  This is precisely the sort of determination preempted by ERISA.

    Plaintiffs argue that their promissory estoppel claim based on Defendants' alleged promise to cover the cost of John Doe's care after the first seven days of care, like their claim for the first seven days of care, is governed by Access.  In that case, Access Mediquip ("Access"), a third-party services provider, sued United Healthcare Insurance Company ("United"), alleging state law causes of action for promissory estoppel, negligent misrepresentation, violations of the Texas Insurance Code, quantum meruit, and unjust enrichment.  662 F.3d at 377. The Fifth Circuit held that Access's claims for promissory estoppel, negligent

---

Paso Healthcare Sys., Ltd., 176 F.3d 847, 864 (5th Cir. 1999) (citing Trammel Crow Co. No. 60 v. Harkinson, 944 S.W.2d 631, 636 (Tex. 1997)); Pavel Enters., Inc. v. A.S. Johnson Co., Inc., 674 A.2d 521, 532 (Md. 1996), there is no conflict of law, and the Court need not undertake a choice-of-law analysis, R.R. Mgmt. Co. v. CFS La. Midstream Co., 428 F.3d 214, 222 (5th Cir. 2005).

misrepresentation, and violations of the Texas Insurance Code were not preempted by ERISA because the claims were based on Access's reliance on alleged misrepresentations made by United "regarding how much, and under what conditions," United would pay the provider for its services. Id. at 380. Because these claims depended on the amount of reimbursement Access could have reasonably expected given United's representations, not on whether its services were fully covered under the terms of the patients' plans, they were not subject to ERISA preemption. Id. at 385.

Access does not govern the result here, however, because the representations underlying Access's claims are distinct from the promise alleged by Plaintiffs. In Access, United employees represented to Access that each of the three patients in question were insured by United and had coverage for the contemplated surgical procedures, and indicated that Access could bill United for the services provided. Id. at 379–80. United subsequently refused to reimburse Access. Id. The Fifth Circuit, characterizing Access's claims, stated that "fairly construed, Access's claims allege that United's agents' statements, though superficially about coverage under the plan, were in their practical context assurances that Access could expect to be paid reasonable charges if it would procure or finance the devices used in [the patients'] surgeries." Id. at 381.

United's statements were thus effectively representations, unqualified by any condition, that it would reimburse Access for the contemplated services.

By contrast, the promise alleged by Plaintiffs with respect to payment for services provided after the first seven days—"that the coverage would continue so long as it continued to be medically necessary for Mr. Doe to stay in the inpatient Neurobehavioral Unit"—is a representation of the conditions under which John Doe's coverage for Kennedy Krieger's services under the plan would continue.  (Am. Compl. ¶ 29.)  A claim that implicates the right to payment under the terms of an ERISA benefit plan is preempted by § 1144(a).  Lone Star OB/GYN, 579 F.3d at 530.  The pleaded promise is not a representation that Kennedy Krieger would be reimbursed for its services, but rather a representation of when Kennedy Krieger's services would be covered.  The promise is expressly conditional: coverage for John Doe's inpatient care beyond the first seven days would continue only "so long as it continued to be medically necessary."  (Am. Compl. ¶ 29.)  The scope of Defendants' alleged promise—that John Doe's coverage for Kennedy Krieger's inpatient services would continue—thus depends on the scope of its condition, and thus necessarily turns on the definition of "medically necessary" under the plan.

Plaintiffs' alleged promise is plagued by the same defect that caused the Fifth Circuit in Access to find that Access's claims for unjust enrichment and

14

quantum meruit—in contrast to its claims for misrepresentation and promissory estoppel—were preempted.  Access alleged that, had it not provided its services to the United patients, another provider would have had to procure or finance the devices used in their surgeries.  Access, 662 F.3d at 386.  These claims depended on whether the ERISA plan would have obliged United to reimburse the other potential providers, which would have required a determination of whether the plans conferred a right to coverage for the services provided.  Id.  Plaintiffs' promissory estoppel claim for services provided after the first seven days similarly depends on the terms of John Doe's plan—in particular, whether continuing inpatient services after the first seven days of care were "medically necessary," and thus covered, by the plan.

Plaintiffs argue that reference to the definition of medically necessary under the plan terms is not, in fact, required under their pleadings.  The Amended Complaint alleges that Defendants "authorized the first seven days of coverage, and promised that the coverage would continue so long as it continued to be medically necessary," necessarily implying that Defendants had determined Kennedy Krieger's inpatient services to be medically necessary when John Doe was first admitted.  (Am. Compl. ¶ 29 (emphasis added).)  The Amended Complaint further alleges that the self-injurious behavior that originally justified John Doe's admission "remained present on the seventh day of admission," and

that Defendants nevertheless subsequently claimed that continued inpatient services were not be covered.  (Id. ¶¶ 32, 35.)  Plaintiffs argue that as a result, no reference to the plan terms is necessary to prove their claim for promissory estoppel—if Defendants initially determined that Kennedy Krieger's services were medically necessary, and John Doe's condition had not changed at the time Defendants refused continued coverage, the factfinder could determine that inpatient services continued to be medically necessary based on Defendants' original determination of medical necessity, without reference to the actual definition of medically necessary under the plan.

        While Plaintiffs' argument is well-stated, the Court is not persuaded that Plaintiffs can avoid ERISA preemption on this basis.  First, whether Kennedy Krieger's inpatient services "continued to be medically necessary" necessarily depends on whether they were medically necessary in the first place.  If an insurer's initial determination that a provider's services were medically necessary was in fact incorrect, a subsequent refusal to cover ongoing services would not breach a promise to continue coverage "so long as it continues to be medically necessary"—if the coverage was not medically necessary to begin with, it by definition could not continue to be medically necessary.  As a result, in order to determine whether the insurer breached its promise, the factfinder would have to determine whether the services in question were medically necessary in the first

16

instance.  Such a determination would require reference to the definition of medical necessity under the plan terms, and is thus preempted by ERISA.

Second, and as noted above, the Supreme Court has repeatedly described the ERISA preemption provision as "clearly expansive," aiming to ensure that plans and plan sponsors would be subject to a uniform body of benefits law.  Access, 662 F.3d at 382 (citing Egelhoff, 532 U.S. at 146); see also Travelers, 514 U.S. at 656.  Allowing a provider to plead a claim for promissory estoppel based on an insurer's promise to cover medically necessary services would significantly undermine this purpose, enabling the litigation of ERISA plan terms under state law based on the sort of interaction between providers and insurers—an initial representation of coverage, accompanied by periodic reviews to determine whether coverage remains medically necessary—that occurs every day.  Finally, the Court notes that while Plaintiffs' present pleadings do not provide a basis to recover the cost of John Doe's care beyond the first seven days, Plaintiffs are not without a remedy.  If Plaintiffs are unable to enforce the terms of the plan through a valid assignment of Jane Doe's ERISA claim, see Tango Transport v. Healthcare Fin. Servs. LLC, 322 F.3d 888, 892 (5th Cir. 2003), Plaintiffs may bring suit against Jane Doe for the cost of the services provided, and Jane Doe

could then join Defendants as third-party defendants to enforce her own rights under the terms of the plan.[5]

In sum, the Court finds that Plaintiffs' promissory estoppel claim against Defendants for services provided to John Doe after the first seven days of care is preempted by ERISA.  The Court therefore **DISMISSES WITHOUT PREJUDICE** Plaintiffs' promissory estoppel claim to the extent it seeks to recover for services provided beyond the first seven days of care.[6]

II.    Whether Brundage is a Proper Party

Brundage further argues that determining whether it is a proper party to this suit will require consideration of the ERISA plan terms, and that Plaintiffs' entire promissory estoppel claim is therefore preempted.  (Dkt. # 104 at 8.) Brundage, as Jane Doe's employer, sponsors the Brundage Plan, which covered Jane and John Doe.  (Am. Compl. ¶¶ 5, 12, 14, 17–18.)  Brundage argues that

---

[5] As the Court noted at the hearing, it appears from Plaintiffs' allegations that Kennedy Krieger admirably performed its ethical duty in continuing to treat a patient that remained a danger to himself and others.  It is therefore with reluctance that the Court finds the bulk of Plaintiffs' claim for recovery preempted.  The Court must nevertheless follow the law as it applies to the allegations stated in the Amended Complaint, and as set out in detail above, the law requires finding that Plaintiffs' claim for recovery beyond the first seven days of care is preempted by ERISA.

[6] Having found that Plaintiffs' claim for services provided beyond the initial seven days of care, as currently alleged, is preempted by ERISA, the Court need not address Defendants' argument that Plaintiffs' allegations fail to state a claim for promissory estoppel.

whether it may be held liable depends on its relationship to the Brundage Plan, and that the Court will need to consider the terms of the plan to determine whether it Brundage was a plan sponsor and whether the Brundage Plan was functionally independent from Brundage.  (Dkt. # 104 at 9.)

    Brundage's argument is misplaced.  The cases cited in support of its argument deal with claims brought by plan beneficiaries under ERISA's private right of action, which limits enforcement of money judgments against an employee benefit plan to the plan itself unless liability against another person is established in that person's individual capacity.  29 U.S.C. § 1132(d)(2); see also Musmeci v. Schwegmann Giant Super Markets, Inc., 332 F.3d 339, 349 (5th Cir. 2003). Plaintiffs' Amended Complaint does not allege a claim under 29 U.S.C. § 1132, and indeed makes clear that Jane Doe has not assigned Plaintiffs her right to pursue an enforcement action under that provision.  (Am. Compl. ¶ 46.)  Plaintiffs' claim is instead based on promissory estoppel, and its theory of liability against Brundage is based on agency, not on Brundage's relationship to the Brundage Plan.  Plaintiffs specifically allege that Inetico was Brundage's actual and apparent agent, that Brundage had the right to control and direct Inetico's actions, and that Inetico was authorized to act on behalf of and bind Brundage.  (Id. ¶¶ 15–16.) Plaintiffs further allege that Inetico's promises regarding John Doe's coverage were made "as the agent of the other Defendants," and that Inetico's decision to

reverse itself and refuse to cover John Doe's inpatient care "was made after taking direction from its principals [including] Brundage."  (Id. ¶¶ 29, 36.)

Brundage's liability under the Amended Complaint thus does not depend on the terms of the Brundage Plan, but rather on Brundage's alleged role as Inetico's principal.  These claims do not "relate to" an ERISA plan under § 1144, and are thus not subject to ERISA preemption.  The Court therefore **DENIES** Brundage's Motion to Dismiss on this basis.

III.   Plaintiffs' Pleading of Damages

Finally, Inetico summarily argues that Plaintiffs' failure to allege the damages arising out of the first seven days of care separately from the damages arising out of services rendered after the first seven days requires that Plaintiffs' entire promissory estoppel claim be dismissed.  (Dkt. # 105 at 5–6.)  Inetico cites no authority in support of its argument.  Plaintiffs have pleaded a single claim for promissory estoppel, and the Court finds no basis for the proposition that a plaintiff must separately and specifically allege damages arising out of its reasonable reliance on a promise based on when the damages were accrued.  The Court therefore **DENIES** Inetico's Motion to Dismiss on this basis.

CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Brundage and the Brundage Plan's Motion to Dismiss (Dkt.

# 104), **GRANTS** BMA's Motion to Dismiss (Dkt. # 106), and **GRANTS IN PART AND DENIES IN PART** Inetico's Motion to Dismiss (Dkt. # 105). Plaintiffs' promissory estoppel claim against each Defendant for the first seven days of inpatient services provided to John Doe remains live.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, November 18, 2015.

David Alan Ezra
Senior United States Distict Judge